IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CAROLE R. WHITE,<br><br>    Plaintiff,<br><br>vs.<br><br>THE KROGER CO. and THE KROGER CO. BENEFITS PLAN<br><br>    Defendants. | ORDER GRANTING AND DENYING SUMMARY JUDGMENT MOTIONS AND AWARDING ATTORNEY'S FEES<br><br><br><br><br>Case No. 1:06-CV-00080 |

Ms. Carole White brings this action against The Kroger Company and The Kroger Company Benefits Plan (collectively, "Kroger") claiming that her COBRA benefits were cut off prematurely by Kroger in violation of 29 U.S.C. § 1162(2)(A)(I) and that Kroger failed to provide plan documents to Ms. White within thirty days of her request as required by 29 U.S.C. § 1024(b)(4). Currently before the court are the parties' cross motions for summary judgment.

As explained below, the court GRANTS IN PART and DENIES IN PART Ms. White's Motion for Summary Judgment (#30) and GRANTS Kroger's Motion for Partial Summary Judgment (#29).

**FACTS**

The record regarding the relevant facts in this case is largely undisputed. In June 2004, Ms. White became eligible for benefits under the Kroger plan as a regular employee. Despite receiving an enrollment notice, she missed the deadline indicated therein for electing benefits. On June 14, 2004, she received a Confirmation Statement informing her that she had not elected any medical coverage and had until June 28, 2004, the "Correction Deadline," to make any corrections. Ms. White made the necessary elections before the Correction Deadline and became an active participant in the plan.

After Ms. White's employment with Kroger was terminated on November 27, 2004, she properly elected COBRA coverage. During the relevant periods, the Kroger plan required its participants, whether active employee participants or COBRA participants, to re-enroll in the plan each year during the Open Enrollment period in first three weeks of the preceding November.[1] Accordingly, in October or November of 2005, Kroger sent its 2006 COBRA Enrollment Guide to all COBRA participants as of that time. The Enrollment Guide states that "[e]veryone must enroll for 2006 benefits" and that "[i]f you don't enroll during this Open Enrollment online or by phone, you will receive no medical, dental or vision coverage for 2006."[2] Kroger also sent an Open Enrollment Notice to White during the fall of 2005, indicating that Open Enrollment started on October 31, 2005, and ended on November 14, 2005.

---

[1] Defs.' Mem. Supp. ¶¶ 27, 28 (Docket No. 31); Pl.'s Mem. Opp'n 7-8 (Docket No. 39).

[2] Defs.' Mem. Supp. ¶¶ 41-45 (Docket No. 31); Pl.'s Mem. Opp'n 4, 9-10 (Docket No. 39).

Ms. White failed to re-enroll during the Open Enrollment period and received, via certified mail, a document entitled "Confirmation Statement" indicating that she had elected "No Coverage."[3] This document further stated that any corrections to Ms. White's enrollment must be made by the "Correction Deadline Date," December 15, 2005.[4] As Ms. White failed to make a proper election of coverage before the Correction Deadline Date, Kroger terminated her coverage on December 31, 2005.[5]

In February 2006, Ms. White fell and sustained injuries that required medical attention. As Ms. White knew that her coverage under the Kroger plan had been terminated, she did not attempt to submit any claims for the medical services provided in connection with the fall until after she had initiated the lawsuit presently before the court.

## DISCUSSION

In her complaint Ms. White alleges that (1) Kroger violated the statutory provisions of COBRA by terminating her coverage before the eighteen month statutory period ended, and (2) that Kroger violated the ERISA requirement to provide plan documents within thirty days of a plan participant request. The court discusses each claim in turn.

### *Termination of Ms. White's COBRA Coverage*

Ms. White argues that COBRA entitles a participant who properly elects benefits thereunder to continuing coverage for at least eighteen months unless one of the specific

---

[3] White Depo. Ex. 11 (Docket No. 31 Ex. C).

[4] *Id.*

[5] Defs.' Mem. Supp. ¶¶ 50, 52, 53 (Docket No. 31); Pl.'s Mem. Opp'n 4, 10 (Docket No. 39).

termination events listed in the statute occurs (*e.g.*, failure to timely pay a premium). Therefore, she argues, when she properly elected COBRA coverage after her November 2004 termination, she was entitled to continuing COBRA coverage for eighteen months and could not be subjected to the Kroger plan's yearly re-enrollment requirements. Kroger responds that COBRA requires the plan to provide the same coverage to both active employees and COBRA participants during such eighteen month period. Thus, Kroger may terminate a COBRA participant's coverage for failing to comply with the plan requirements just as it would with regard to the coverage of an active employee participant who failed to comply with plan requirements.

Although COBRA requires that employers provide health coverage for a period of eighteen months after termination of employment,[6] federal regulations governing COBRA plans allow a plan to terminate for cause the coverage of a COBRA participant based on the same grounds that it would terminate the coverage of a non-COBRA plan participant.[7] The hallmark of COBRA is to ensure equal coverage between regular plan participants and COBRA plan participants.[8] Thus, by this same token, active employee participants and COBRA participants are held to substantially similar administrative obligations required by the plan.

In this case, the Kroger plan required the all plan participants re-enroll in coverage during the Open Enrollment period during the first part of each November in order to obtain plan coverage for the following year. Ms. White failed to elect benefits for 2006 during the

---

[6] 29 U.S.C. § 1162(2)(A)(I).

[7] 26 C.F.R § 54.4980B-7 Q-1/A-1(b) (2006).

[8] 29 U.S.C. § 1162(1) (2007).

November 2005 Open Enrollment period.  On December 8, 2005, White received a document entitled "Confirmation Statement," which clearly indicated that White had elected "No Coverage" for the medical plan.  It also informed her that "any corrections to [her] enrollment elections" needed to be made by December 15, 2006, the "Correction Deadline Date."  As Ms. White failed to make any election prior to this date, Kroger terminated her coverage on December 31, 2006.

      Ms. White argues that she was not fairly informed of the necessity of re-enrolling and that Kroger violated its fiduciary duties to the participants by failing to communicate with White regarding the termination of her COBRA coverage.  However, the December 8, 2005 statement received by Ms. White clearly indicates that she was not enrolled in benefits and that any corrections to her unenrolled status "must" be made prior to the December 15, 2006 deadline.  Moreover, the record indicates that on more than one prior occasion, Ms. White failed to meet an enrollment deadline, received a "Correction Statement," and cured the defect prior to the "Correction Deadline Date."  Although the court certainly sympathizes with Ms. White's situation, an ERISA plan is entitled to set and enforce reasonable policies to ensure the orderly administration of the plan.

      Ms. White also argues that Kroger treats COBRA participants differently than active employee participants when it distributes to each division a list of employees who fail to properly make a coverage election during the Open Enrollment period.  Each division may or may not, according to their discretion, use this list to notify employees of their enrollment deficiency

before the corrections deadline.[9]  Both active employee participants and COBRA participants who fail to enroll are listed.[10]  When the final deadline to enroll for any given participant has passed, his or her name is removed from the list.[11]  According to White, by not offering this service to COBRA participants, Kroger is not providing them with equal coverage.

The record is ambiguous as to whether Kroger actually follows up on this list, so Ms. White's argument fails on that ground alone.  But even assuming that a supervisor may have occasionally followed up with an employee about the need to re-enroll, that would not establish a COBRA violation.  Although Ms. Kroger never actually cites the statutory provision on which she relies, it is apparently the COBRA provision directing an employer to provide coverage that "is identical to the *coverage* provided under the plan to similarly situated beneficiaries under the plan . . . .".[12]  There is no dispute that Ms. White had access to the same "coverage" as active Kroger employees.  All that is at issue is whether some kind of administrative follow-up may have differed because she no longer worked at a Kroger facility.  Moreover, reading COBRA as broadly as Ms. White does would lead to nonsensical results.  It would mean, for example, that an employer could not post a notice an employee bulletin board reminding employees to re-enroll for health benefits because this would treat them advantageously compared to COBRA participants who do not walk by the bulletin board daily.  Surely COBRA should not be read to

---

[9] Monti Supp. Aff. ¶ 9 (Docket No. 41).

[10] *Id.* at 11.

[11] *Id.* at 12.

[12] 29 U.S.C. § 1162(1) (emphasis added)

discourage bulletin boards and other kinds of informal follow-up that may be available to active employees simply by virtue of their on-the-job status.

Therefore, as the plan requires COBRA and non-COBRA participants alike to re-enroll each year during the Open Enrollment period and Ms. White failed to enroll after receiving notice of her enrollment deficiency, the court finds that her coverage was properly terminated by Kroger.

### *Failure to Produce Plan Documents and Attorney's Fees*

Ms. White also argues that she is entitled to summary judgment on her "penalties" claim. This claim arises under a provision of ERISA, which provides that if a plan fails to provide a plan participant with certain requested documentation promptly, then the court may order the plan administrator to pay a claimant up to $110 per violation per day of delay.[13]

It is undisputed that Ms. White requested various documents about the plan, through her attorney, on May 18, 2006. It is also undisputed that Kroger did not provide those documents to her until October 3, 2006 – a period of 137 days.

Kroger argues it had no obligation to turn over documents to her because she was not a plan "participant" for all the reasons that have been discussed earlier in this opinion. The case law is clear, however, that a claimant can obtain documents if she has "a *colorable claim* that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in

---

[13] 29 U.S.C. § 1024(b)(4) and 1132(c); *see also* 62 C.F.R. § 40699; 29 C.F.R. § 2575.502 c-1.

the future."[14]  Here it should have been obvious to Kroger that Ms. White had a colorable claim to benefits when it received a letter from her experienced and well-regarded attorney requesting the information.  Moreover, plan administrators should err on the side of providing plan information to those who have legitimate reasons for requesting it.  Kroger has not offered any good explanation for declining Ms. White's seemingly straightforward request.  The court therefore finds that Kroger breached its obligations under ERISA to provide plan information to Ms. White.

The issue then arises as to the appropriate penalty for the delay.  Perhaps anticipating a ruling against it on this point, Kroger cites various cases that have awarded penalties in the range of about $30 per day where the only prejudice to the party seeking information has been aggravation and frustration.[15]  The court agrees that this is a reasonable range for a penalty and therefore awards a penalty of $4,110 (137 days x $30 penalty/day).  The court declines to award any interest on this award, having considered the time value of money in setting the size of the penalty.

The court is empowered to award attorney's fees to a prevailing party on an ERISA claim.  As Ms. White has prevailed on her claim, the court must use the framework developed by the Tenth Circuit on fees:

> In deciding whether to exercise its discretion and award fees, a district court

---

[14] *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1038-39 (9th Cir. 2006) (*citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117-18 (1989)).

[15] Memo. in Opp. to Plaintiff's Motion for Summary Judgment at 33-34 (collecting authorities).

> should consider the following non-exclusive list of facts: (1) the degree of the offending party's culpability or bad faith; (2) the degree of the ability of the offending party to satisfy an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' position.[16]

The court does not believe that Kroger acted in bad faith. Nonetheless, it has offered no real reason for declining to undertake the seemingly ministerial task for copying documents for Ms. Kroger's attorney. Kroger is also apparently in a position to satisfy an award of fees, an award will encourage dissemination of plan information in the future to the benefit of all plan participants, and Ms. White had much the stronger argument on her ERISA claim. Therefore, the court will award fees to her counsel. It should be understood, however, that Ms. White did not prevail on other aspects of her suit, which were not covered by the ERISA attorney's fees provision in any event. Therefore, a fee award is proper only for time reasonably attributable to her ERISA claim. Her counsel is directed to file appropriate supporting information for a fee award on the ERISA claim by November 16, 2007. Kroger may lodge any objections by December 7, 2007.

/

/

/

/

/

---

[16] *DeBoard v. Sunshine Mining and Refining Co.*, 208 F.3d 1228, 1224 (10th Cir. 2000).

## CONCLUSION

Accordingly, as outlined above, the court hereby GRANTS IN PART and DENIES IN PART Ms. White's Motion for Summary Judgment (#30) and GRANTS Kroger's Motion for Partial Summary Judgment (#29).  Also, finding no good cause shown for out-of-time discovery, the court DENIES Ms. White's motion under Fed. R. Civ. P. 56(f) (#45) for additional discovery.

DATED this  2nd day of November, 2007.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge